**EXHIBIT A**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - x
                              :
In re:                        :   Chapter 11
                              :
TWEETER HOME ENTERTAINMENT    :   Case No. 0710787 (PJW)
GROUP, INC., et al.,          :
                              :   Jointly Administered
              Debtors.        :
                              :
- - - - - - - - - - - - - - x

**ORDER (I) APPROVING PROCEDURES IN CONNECTION WITH SALE OF ALL OR SUBSTANTIALLY ALL OF THE BUSINESS, AND (II) AUTHORIZING THE DEBTORS TO ENTER INTO STALKING HORSE AGREEMENTS IN CONNECTION WITH GOING CONCERN, STORE CLOSING AND MISCELLANEOUS ASSET SALE, (III) APPROVING THE PAYMENT OF TERMINATION FEE IN CONNECTION THEREWITH, AND (IV) SETTING AUCTION AND HEARING DATES PURSUANT TO BANKRUPTCY CODE SECTIONS 105 AND 363**

Upon the motion (the "Motion")[1] of the Debtors,

for entry of an order (the "Order"), under Bankruptcy

Code sections 105 and 363 and Bankruptcy Rule 6004,

authorizing and approving, among other things, (I)

approving procedures in connection with a sale of all or

substantially all of the business, (II) authorizing the

Debtors to enter into stalking horse agreements in

connection with Going Concern, Store Closing and/or

Miscellaneous Asset Sales, (III) approving the Debtors'

---

[1]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

payment of a Termination Fee in connection therewith,
and (IV) scheduling Auction and Sale Hearing Dates; and
the Court having determined that the relief requested in
the Motion is in the best interests of the Debtors,
their estates, their creditors, and other parties in
interest herein; and upon the record herein; and after
due deliberation thereon; and good and sufficient cause
appearing therefore; it is hereby

#### FOUND AND DETERMINED THAT:[2]

A.   The court has jurisdiction over the
Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this
matter is a core proceeding pursuant to 28 U.S.C.
§ 157(b)(2)(A).  Venue of these cases and the Motion in
this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.   Good and sufficient notice of the relief
sought in the Motion has been given and no further
notice is required.  A reasonable opportunity to object
or be heard regarding the relief requested in the Motion
(including, without limitation, with respect to the

---

[2]   Findings of fact shall be construed as conclusions of law and
conclusions of law shall be construed as findings of fact when
appropriate.  See Fed. R. Bankr. P. 7052.

proposed Bidding Procedures and the Termination Fee) has been afforded to all interested persons and entities including but not limited to: (i) the Office of the United States Trustee; (ii) the Debtors' top thirty (30) creditors; (iii) counsel for GECC; (iv) the United States Attorney's Office; (v) the Securities and Exchange Commission; and (vi) all other parties that have filed a notice of appearance and demand for service of papers in these bankruptcy cases under Bankruptcy Rule 2002.

C.   The Debtors' proposed notice of the Bidding Procedures, the Auction (if necessary) and the Sale Hearing, as set forth in the Motion, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice, and no other or further notice is required.

D.   The Bidding Procedures substantially in the form attached hereto as Exhibit 1 hereto are fair, reasonable, and appropriate and are designed to maximize the recovery with respect to the Going Concern, Store Closing and/or Miscellaneous Asset Sales.

3

E.    The Debtors have demonstrated a compelling and sound business justification for authorizing the payment of the Termination Fee under the circumstances, timing, and procedures set forth in the Motion.

F.    The Termination Fee is fair and reasonable and provides a benefit to the Debtors' estates and creditors.

G.    The Debtors' payment of the Termination Fee, under the conditions set forth in the Motion and in this Order, is (a) an actual and necessary cost of preserving the Debtors' estates, within the meaning of section 503(b) of the Bankruptcy Code, (b) of substantial benefit to the Debtors' estates and creditors and all parties in interest herein, (c) reasonable and appropriate and (d) necessary to ensure that any Stalking Horse Bidder will continue to pursue its proposed agreement to undertake the Going Concern, Store Closing and/or Miscellaneous Asset Sales.

H.    The entry of this Order is in the best interests of the Debtors and their estates, creditors,

4

and interest holders and all other parties-in-interest
herein; and it is therefore

**ORDERED, ADJUDGED AND DECREED THAT:**

1.    The bidding procedures attached hereto as
Exhibit 1 (the "Bidding Procedures") with respect to the
qualifying bidders and conducting the Going Concern,
Store Closing and/or Miscellaneous Asset Sales.

2.    If the Debtors have entered into a
Stalking Horse Agreement on or prior to June 22, 2007,
the Debtors may grant the non-debtor party thereto (the
"Stalking Horse Bidder") the right to receive a
Termination Fee of no more than 3% of the cash purchase
price payable on such terms and conditions as set forth
in the Stalking Horse Agreement.  In no event shall such
Termination Fee be payable if the Stalking Horse
Agreement contains a "due diligence" or financing
contingency.

3.    If the Debtors have entered into a
Stalking Horse Agreement after June 22, 2007 and before
July 9, 2007 at 9:00 a.m., the Debtors may grant the
Stalking Horse Bidder thereto the right to receive a
Termination Fee of no more than 2% of the cash purchase

5

price payable on such terms and conditions as set forth
in the Stalking Horse Agreement.  In no event shall such
Termination Fee be payable if the Stalking Horse
Agreement contains a "due diligence" or financing
contingency.

4.    Any such Termination Fee referenced in
paragraphs (2) and (3) above shall only be paid by the
Debtors if the Stalking Horse Bidder is not the
successful bidder at the Final Auction, and the Debtors
shall not be permitted to offer two Termination Fees
with respect to any bid covering the same assets.

5.    The Sale Hearing, at which the Debtors
shall seek approval of the Successful Bid, shall be held
in this Court on July 13, 2007, at 9:30 a.m. (Eastern).
The Sale Hearing may be adjourned or rescheduled without
further notice by an announcement of the adjourned date
at the Sale Hearing.

6.    Notice of the Sale Motion shall be deemed
adequate if the Debtors serve the Sale Motion by regular,
U.S. Mail on or before June 24, 2007 on (a) counsel for
the Creditors' Committee and any other official
committee appointed in these chases, or if no Creditors'

6

Committee or other official committee has been appointed, on the Debtors' top thirty (30) creditors; (b) counsel for GECC; (c) the list of all entities that have filed a request for service of notices in these bankruptcy cases pursuant to Bankruptcy Rule 2002(i); (d) all entities known to have expressed an interest in a transaction regarding the debtors' assets, stores or inventory during the past four (4) months; (e) all landlords and entities known to have an interest in any of the assets to be sold; (f) all federal, state, and local regulatory or taxing authorities or recording offices that have a reasonably known interest in the relief requested through the Motion.

      7.   Notwithstanding Bankruptcy Rule 6004(g), this Order shall take effect immediately upon its entry.

Dated:    Wilmington, Delaware
           June __, 2007

                              _____
                              UNITED STATES BANKRUPTCY JUDGE

**Exhibit 1**

**Bidding Procedures**

## SALE PROCEDURES

Set forth below are the sale procedures (the "Sale Procedures")[1] to be employed with respect to the selection of the highest or otherwise best bid(s) for all or any part of the Debtors' assets or businesses.

## THE AUCTIONS

## I.   THE STORE CLOSING AUCTION

An auction (the "Store Closing Auction") will be conducted at the offices of Skadden, Arps, Slate, Meagher & Flom, LLP, 4 Times Square, New York, New York 10036, commencing at 9:00 a.m. (Eastern) on July 10, 2007 with respect to any and all bids received (the "Store Closing Bids"), to conduct store closing sales (the "Store Closing Sales") with respect to, among other things the inventory located Debtors' retail stores and distribution centers (the "Closing Stores") and to determine the highest and best offer with respect to any agreement to conduct the proposed Store Closing Sales. Bidding at such auction will continue until all bidders have submitted their highest or otherwise best bid.  At the conclusion of the bidding, the Debtors (after consultation with representatives of GECC and the Creditors' Committee) shall announce the bid the Debtors have determined to be the highest or otherwise best bid.  The bidder submitting the highest or otherwise best bid will be requested to remain for the Final Auction (as defined herein).  The Store Closing Auction will not be closed until the completion of all of the auctions contemplated herein.

## II.   THE GOING CONCERN AUCTION

In the event that the Debtors receive bids with respect to any or all of their business or retail

---

[1]     Unless otherwise defined herein, each capitalized term shall have the meaning assigned to it in the Motion.

stores that contemplate those stores being operated as a
continuing business whether nationally or on a geo-
graphical or other basis (each a "Going Concern Bid"),
an auction (the "Going Concern Auction") will be con-
ducted at the offices of Skadden, Arps, Slate, Meagher &
Flom, LLP, 4 Times Square, New York, New York 10036 on
July 10, 2007, commencing at the later of 2 p.m. or the
conclusion of the Store Closing Auction to determine the
highest or otherwise best offer for the business or as-
sets for which a Going Concern Bid has been received.
Any bidder submitting a Going Concern Bid may appear and
submit its highest or best bid at the Going Concern Auc-
tion.  Bidding will continue on assets subject to a Go-
ing Concern Bid until such time as no higher or other-
wise best bid is received.  The bidder submitting the
highest or otherwise best bid will be requested to re-
main for the Final Auction.  The Going Concern Auction
will not be closed until completion of all the auctions
contemplated herein.

## III. THE MISCELLANEOUS ASSET AUCTION

        Upon the conclusion of the bidding at any Go-
ing Concern Auction, the Debtors will commence an auc-
tion with respect to any assets not included in the
highest or otherwise best Going Concern Bid, including
any inventory, or store leases at any stores, warehouses
and distribution centers not included in the Store Clos-
ing Auction or the Going Concern Auction (the "Miscella-
neous Asset Sales").  That auction (the "Miscellaneous
Asset Auction") will be conducted at the offices of
Skadden, Arps, Slate, Meagher & Flom, LLP, 4 Times
Square, New York, New York 10036, immediately following
the Going Concern Auction.  Any bidder submitting a
Qualified Miscellaneous Asset Bid (as defined below) (a
"Qualified Miscellaneous Asset Bidder") may appear and
submit its highest or otherwise best bid at the Miscel-
laneous Asset Auction.  Bidding at the Miscellaneous As-
set Auction will continue until each Qualified Miscella-
neous Asset Bidder has submitted its highest or other-
wise best bid for the Miscellaneous Asset Sale.  At the
conclusion, the bidder(s) submitting the highest or oth-

erwise best bid(s) will be requested to remain for the
Final Auction.  The Miscellaneous Asset Auction will not
be closed until completion of all the Auctions.


IV.  **THE FINAL AUCTION**

          Upon the conclusion of bidding at the Store
Closing Auction, the Going Concern Sale Auction and the
Miscellaneous Asset Auction, the Debtors, after consul-
tation with representatives of GECC and the Creditors'
Committee, will determine which bid or combination of
bids provides the Debtors, their estates and creditors
with the highest or otherwise best offer.  Upon such an-
nouncement, the Debtors will then commence an auction
(the "Final Auction") in which the successful bidders at
the Store Closing Auction, the Miscellaneous Asset Auc-
tion and the Going Concern Sale Auction may participate.
Bidding at the Final Auction will continue until such
time as each bidder has submitted its highest or other-
wise best bid.  At the conclusion of the Final Auction,
the Debtors, after consultation with representatives of
GECC and the Creditors' Committee, will announce the
bidder or bidders submitting the bid(s) that they have
determined constitute the highest or otherwise best bid
(the "Successful Bid") and close the Auctions.

**QUALIFIED BIDS**

A.  **Store Closing Bids**

     Under the Sale Procedures only "Qualified Store
Closing Bidders," _i.e._, persons or entities submitting
Qualified Store Closing Bids, may participate in the
Store Closing Auction.  To be considered a "Qualified
Store Closing Bid" for purposes of the Store Closing
Sales the person or entity submitting the bid must
(i) submit an offer in the form of mark-up of the Debt-
ors' form of agency agreement by the Bid Deadline (as
defined hereinafter) that provides, among other things,
a minimum initial payment (the "Initial Payment"), in
immediately available funds, of an amount not less than
the guaranteed amount payable to the Debtors under the
agency agreement on or before July 16, 2007 at 1:00 p.m.

3

(Eastern); (ii) identify the potential bidder and the officer(s) or authorized agent(s) who will appear on behalf of such bidder; (iii) provide evidence, satisfactory to the Debtors in their reasonable discretion (after consultation with GECC and the Creditors' Committee), of the bidder's financial wherewithal and operational ability to manage the Store Closing Sales program contemplated in the proposed agency agreement and the financial and other obligations contemplated by the proposed agency agreement, including the guaranty of the Debtors' expenses incurred in connection with the Store Closing Sales; (iv) provide that the bid shall not be conditioned on the outcome of unperformed due diligence by the bidder or any financing contingency; and
(v) provide that the bidder's offer is irrevocable until the later of (y) entry of a final order approving the agency agreement with such bidder, as it may be modified prior to entry, and the dissolution of any stays of such order or (z) implementation of a transaction involving any other bidder.

**B.    Going Concern Bids.**

The Debtors will consider bids on any or all of their businesses or retail stores that contemplate those stores being operated as a business, other than as part of Store Closing Sales.  Such Going Concern Bid may include bids for any or all of the Debtors' remaining assets, including but not limited to: (i) inventory at retail stores that the bidder would not operate; (ii) leases of non-residential real property or designation rights related to such retail locations.

Any person who desires to make a bid with respect to any or all of the Debtors' assets shall deliver the following documents (the "Going Concern Bid Documents"):

(i)    A letter stating that the bidder's offer is irrevocable until the later of (y) 2 business days after the Going Concern Assets have been disposed of pursuant to the Bidding Procedures, and (z) 30 days after the Sale Hearing, as defined herein;

(ii)    A markup of the form Asset Pur-
chase Agreement to be provided by the Debtors and an
executed copy of any purchase agreement that the bidder
proposes the Debtors to enter into;

(iii)    Written evidence of a commit-
ment for financing or other evidence of ability to con-
summate the proposed transaction; and

(iv)    The form of order that the bid-
der would request the Debtors to seek Court approval at
the July 13, 2007 hearing.

All bids will be considered, but the Debtors
reserve their right to reject any or all bids.  Bids
will be evaluated on numerous grounds, however, bids
that are unconditional and contemplate sales that may be
consummated on or soon after the July 13, 2007 hearing
are preferred.

C.    **Miscellaneous Asset Sale Bids.**

Under the Bidding Procedures only "Qualified
Miscellaneous Asset Bidders," _i.e._ persons or entities
submitting Qualified Asset Bids, may participate in the
Miscellaneous Asset Auction.  To be considered a "Quali-
fied Miscellaneous Asset Bid" for purposes of the Mis-
cellaneous Asset Sales the person or entity submitting
the bid must be: (i) a Qualified Store Closing Bidder,
(ii) a Qualified Going Concern Bidder; or (iii) submit
an offer in the form of a purchase agreement by the Bid
Deadline (as defined hereinafter) that specifically
identifies (a) the asset(s) to be purchased, (b) the
purchase price, (c) identify the potential bidder and
the officer(s) or authorized agent(s) who will appear on
behalf of such bidder, (d) provide evidence, satisfac-
tory to the Debtors in their reasonable discretion (af-
ter consultation with GECC and the Creditors' Committee),
of the bidder's financial wherewithal, (e) provide that
the bid shall not be conditioned on the outcome of un-
performed due diligence by the bidder or any financing
contingency, and (f) provide that the bidder's offer is
irrevocable until the later of the entry of a final or-

5

der approving the purchase agreement with such bidder, as it may be modified prior to entry, and the dissolution of any stays of such order or implementation of a transaction involving any other bidder.

## BID DEADLINE

Any person or entity wanting to participate in the Store Closing Auction, the Going Concern Auction and/or the Miscellaneous Asset Auction must submit a Store Closing Bid, a Going Concern Bid or a Qualified Miscellaneous Asset Bid on or before **July 9, 2007 at 11:00 a.m. (Eastern)** (the "Bid Deadline") in writing, to (1) Gregg M. Galardi, Skadden, Arps, Slate, Meagher & Flom LLP, One Rodney Square, P.O. Box 636, Wilmington, DE 19801; and (2) Robert J. Duffy, FTI Consulting LLC ("FTI"), 125 High Street, Suite 1402, Boston, MA 02110. FTI shall then distribute copies of the bids to (x) counsel for GECC and (y) counsel for the Creditors' Committee.  The Debtors shall announce the terms of the highest or otherwise best Store Closing Bid, Going Concern Bid and Miscellaneous Asset Bid, after consultation with counsel for GECC and counsel for the Creditors' Committee, on or before the commencement of the Store Closing Auction, Going Concern Auction and the Miscellaneous Asset Auction.

## TERMINATION FEE

The Debtors are soliciting "stalking horse" bidders for the Store Closing, Going Concern and Miscellaneous Asset Sales.  The Bankruptcy Court has authorized the Debtors to enter into stalking horse agreements with a bidder submitting a qualified Store Closing, Going Concern or Miscellaneous Asset Bid before the Bid Deadline and to provide such bidder with a Termination Fee of up to 2% of the guaranteed cash purchase price offered by such bidder; provided, however, that any such bid shall not be subject to "due diligence" or financing contingencies.

In the event that the Debtors exercise their discretion and agree to such a Termination Fee, the

amount of such fee shall be considered by the Debtors in determining the highest or otherwise best bid and the net value that the Debtors' estates will realize at any Auction.

## STORE CLOSING AUCTION PROCEDURES

Prior to the Store Closing Auction, the Debtors will advise all Store Closing Bidders of what they believe to be the highest or otherwise best Store Closing Bid. Only a Store Closing Bidder who has submitted a Store Closing Bid is eligible to participate at the Store Closing Auction. During the Store Closing Auction, bidding shall begin initially with the highest or otherwise best bid and subsequently continue in such minimum increments as the Debtors shall determine at the Store Closing Auction.

Upon conclusion of the Store Closing Auction, the Debtors, in consultation with the Creditors' Committee and GECC, shall (i) review each Store Closing Bid on the basis of financial and contractual terms and the factors relevant to the Store Closing Sale and (ii) identify the highest or otherwise best offer for the Store Closing Sales (the "Successful Store Closing Bid"). For the Store Closing Auction, the Debtors may designate multiple Successful Store Closing Bids for various stores.

## GOING CONCERN AUCTION PROCEDURES

Prior to the Going Concern Sale Auction, the Debtors will advise all Going Concern Bidders of what they believe to be the highest or otherwise best Going Concern Bid. Only a Going Concern Bidder who has submitted a Going Concern Bid is eligible to participate at the Going Concern Sale Auction. During the Going Concern Sale Auction, bidding shall begin initially with the highest or otherwise best bid and subsequently continue in such minimum increments as the Debtors shall determine at the Going Concern Sale Auction.

Upon conclusion of the Going Concern Sale Auction, the Debtors, in consultation with the Creditors'

7

Committee and GECC, shall (i) review each Going Concern
Bid on the basis of financial and contractual terms and
the factors relevant to the Asset Sale and (ii) identify
the highest or otherwise best offer for an asset (the
"Successful Going Concern Bid").  For the Going Concern
Sale Auction, the Debtors may designate multiple Suc-
cessful Going Concern Bids for various assets.

## MISCELLANEOUS ASSET AUCTION PROCEDURES

Prior to the commencement of the Miscellaneous
Asset Auction, the Debtors will advise all Qualified
Miscellaneous Asset Bidders of what they believe to be
the highest or otherwise best Qualified Miscellaneous
Asset Bid received.  Only a Qualified Miscellaneous As-
set Bidder who has submitted a Qualified Miscellaneous
Asset Bid shall be eligible to participate at the Mis-
cellaneous Asset Auction.  During the Miscellaneous As-
set Auction, bidding shall begin initially with the
highest or otherwise best bid and subsequently continue
in such minimum increments as the Debtors shall deter-
mine at the Miscellaneous Asset Auction, after consulta-
tion with the Creditors' Committee and GECC.

Upon conclusion of the Miscellaneous Asset
Auction, the Debtors, in consultation with the Credi-
tors' Committee and GECC, shall identify the highest or
otherwise best offer (the "Successful Miscellaneous As-
set Bid").

## NO COMBINATION BIDDING

Bidders may not form joint ventures or part-
nerships to submit bids with respect to the Store Clos-
ing Sale or the Miscellaneous Asset Sales, without the
prior written consent of the Debtors.  Without limiting
the generality of the foregoing, separate bidders on the
Store Closing, Going Concern and Miscellaneous Asset
Sale may not combine their bids without the prior writ-
ten approval of the Debtors.

8

**RETURN OF GOOD FAITH DEPOSIT**

Bidders will be required to submit good faith deposits with the Debtors on or before the Bid Deadline. Such Good Faith Deposits shall be equal to 10% of the Cash purchase price.  Good Faith Deposits of all Qualified Bidders (except for the Successful Bidder) shall be held in a separate interest-bearing account until three (3) business days following the Sale Hearing.  If a Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtors will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder, and such Good Faith Deposit shall irrevocably become property of the Debtors (the "Good Faith Deposits").

**RESERVATION OF RIGHTS**

The Debtors reserve the right to (i) determine at their reasonable discretion (after consultation with the Creditors' Committee and GECC) which offer is the highest or best offer and (ii) reject at any time prior to entry of a Court order approving an offer, without liability, any offer that the Debtors in their reasonable discretion (after consultation with the Creditors' Committee and GECC) deem to be (x) inadequate or insufficient, (y) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or procedures set forth therein or herein, or (z) contrary to the best interests of the Debtors and their estates.

The selection of a successful bidder shall be within the reasonable business judgment of the Debtors (after consultation with the Creditors' Committee and GECC) and subject to the approval of the Bankruptcy Court, and economic considerations shall not be the sole criteria upon which the Debtors may base their decision. In assessing whether a bid constitutes a higher or better offer, the Debtors shall consider, among other things, the net economic effect upon the Debtors' estates.  The presentation of a particular bid to the

9

Bankruptcy Court for approval does not constitute the
Debtors' acceptance of the bid.  The Debtors will be
deemed to have accepted a bid only when the bid has been
approved by the Bankruptcy Court at the Sale Hearing.
At or before the Sale Hearing, the Debtors, after con-
sultation with the Creditors' Committee and GECC, may
impose such other terms and conditions on Qualified
Store Closing Bidders, Qualified Going Concern Bidders
and/or Qualified Miscellaneous Bidders as the Debtors
may determine to be in the best interests of the Debtors,
their estates, their creditors, and other parties in in-
terest.

497969.08-Wilmington Server 1A - MSW