## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| TWEETER HOME | ) Case No. 07-10787 (PJW) |
| ENTERTAINMENT GROUP, INC. | ) |
| et al., [1] | ) (Jointly Administered) |
| | ) |
| Debtors. | ) Related Docket Nos. 111, 187, 211, 287, 300, |
| | ) 302, 319 |

### ORDER (1) APPROVING SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (2) APPROVING ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS AND LEASES; AND (3) GRANTING RELATED RELIEF

This matter came before the Court on the "Debtors' Motion for Order

(I) Approving Procedures in Connection With Sale of All or Substantially All of the Business,

and (II) Authorizing the Debtors to Enter into Stalking Horse Agreements in Connection With

Going Concern, Store Closing and Miscellaneous Asset Sale, (III) Approving the Payment of

Termination Fee in Connection Therewith, and (IV) Setting Auction and Hearing Dates Pursuant

to Bankruptcy Code Sections 105 and 363 (the "Sale Motion"). Pursuant to the Sale Motion, the

above-captioned debtors and debtors in possession (collectively, the "Debtors") sought, *inter*

*alia*, (a) an order authorizing the sale of substantially all the assets (the "Sale") of the Debtors to

Tweeter Newco, LLC and/or its assignees ("Purchaser"), free and clear of all Liens, Claims,

Interests and Encumbrances (as such terms are defined in the Asset Purchase Agreement dated as

---

[1]  The Debtors are the following entities: Tweeter Home Entertainment Group, Inc.; New England Audio Co., Inc.; Sound Advice of Arizona, Inc.; NEA Delaware, Inc.; THEG USA, LP; Hillcrest High Fidelity, Inc.; Sound Advice, Inc.; and Sumarc Electronics Inc.

of June 26, 2007 (the "Purchase Agreement")[2] pursuant to Sections 105, 363 and 365 of title 11

of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and Rules 2002,

6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")

(the assets to be sold being more fully described in and collectively defined in the Purchase

Agreement, and hereinafter referred to as the "Purchased Assets").

      On June 26, 2007, the Court entered its "Order (I) Approving Procedures in

Connection With Sale of All or Substantially All of the Business, and (II) Authorizing the

Debtors to Enter into Stalking Horse Agreements in Connection With Going Concern, Store

Closing and Miscellaneous Asset Sale, (III) Approving the Payment of Termination Fee in

Connection Therewith, and (IV) Setting Auction and Hearing Dates Pursuant to Bankruptcy

Code Sections 105 and 363" (the "Bid Procedures Order"), authorizing the Debtors to proceed

with the sale procedures set forth therein and approving the Termination Fee (the "Bid

Procedures") and the form of notice of the hearing on the Sale Motion.

      The Court, having conducted a hearing on the Sale Motion on July 13, 2007 (the

"Sale Hearing); and all parties in interest having been heard, or having had the opportunity to be

heard, regarding approval of the Purchase Agreement, and the transactions contemplated thereby

(the "Transactions"); and the Court having reviewed and considered the Sale Motion and

objections thereto, and the arguments of counsel made, and the evidence adduced, at the Sale

Hearing; and it appearing that the relief requested in the Sale Motion is in the best interests of the

Debtors, their estates, their creditors, and all other parties in interest; and upon the record of the

Sale Hearing and these chapter 11 cases, and after due deliberation thereon, and good cause

---

    [2]    A copy of the Purchase Agreement is attached hereto as Exhibit B. Except as otherwise noted in this Order, capitalized terms that are used but not defined in this Order have the meanings ascribed to such terms in the Purchase Agreement.

2

appearing therefore; **THE COURT HEREBY FINDS DETERMINES AND CONCLUDES
THAT:**

A.      The findings and conclusions set forth herein constitute the Court's
findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. To the extent any of
the following findings of fact are determined to be conclusions of law, they are adopted, and
shall be construed and deemed, conclusions of law. To the extent any of the following
conclusions of law are determined to be findings of fact, they are adopted, and shall be construed
and deemed, as findings of fact.

B.      The Court has jurisdiction to hear and determine the Sale Motion and to
grant the relief requested in the Sale Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b).
Venue of these cases and the Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and
1409. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

C.      The statutory predicates for the relief requested in the Sale Motion are
Sections 105, 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006,
9014 and 9019.

D.      As evidenced by the affidavits of service filed with the Court, written
notice of the Sale Hearing was transmitted to: (a) the Office of the United States Trustee; and
(b) to (i) the creditors holding the largest claims in these Chapter 11 Cases; (ii) the persons
known to the Debtors to possess and/or exercise any control over any of the Purchased Assets;
(iii) the persons known to the Debtors to assert any rights in any of the Purchased Assets; (iv) all
applicable federal, state and local tax authorities with jurisdiction over the Debtors and/or the
Purchased Assets; (v) all federal, state and local environmental authorities in jurisdictions in
which the Debtors operate and/or in which the Purchased Assets are located; (vi) any known

3

party that has expressed a bona fide interest in writing to the Debtors regarding any purchase of the Purchased Assets; (vii) counsel for the Official Committee of Unsecured Creditors ("Committee") and counsel for the Court approved post-petition lenders to the Debtors ("DIP Lenders"); and (viii) all entities that have requested notice in the Debtors' chapter 11 cases.

E.    Based upon the affidavits of service filed with the Court: (a) notice of the Sale Motion, the Bid Procedures, the Bid Procedures Order, the Sale Hearing and of the Debtors' intention to assume and assign Assumed Executory Contracts, was adequate and sufficient under the circumstances of these chapter 11 cases and these proceedings and complied with the various applicable requirements of the Bankruptcy Code and the Bankruptcy Rules; and (b) a reasonable opportunity to object and be heard with respect to the Sale Motion and the relief requested therein was afforded to all interested persons and entities.

F.    The Purchased Assets are property of the Debtors' estates and title thereto is vested in the Debtors' estates.

G.    The Bid Procedures were substantively and procedurally fair to all parties, were consented to by all parties in the chapter 11 cases, and were the result of intense arms length negotiations among the Debtors, the Committee, Purchaser and the DIP Lenders.

H.    The Debtors and their professionals marketed the Purchased Assets and conducted the sale process in accordance with the Bid Procedures. The Debtors provided notice of the sale of the Purchased Assets to Purchaser to each of the entities that previously expressed a bona fide interest in the Purchased Assets or the Business. Based upon the record of these proceedings, all creditors and equityholders, all other parties-in-interest and all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Purchased Assets.

I.      After an auction held on July 10, 2007, the Debtors determined that the
highest and best Qualified Bid was that of Purchaser.

J.      Subject to the entry of this Order, each Debtor (i) has full power and
authority to execute the Purchase Agreement and all other documents contemplated thereby, and
the sale of the Purchased Assets by the Debtors has been duly and validly authorized by all
necessary company action of each of the Debtors, (ii) has all of the power and authority
necessary to consummate the Transactions contemplated by the Purchase Agreement, (iii) has
taken all company action necessary to authorize and approve the Purchase Agreement and the
consummation by such Debtors of the Transactions. No consents or approvals, other than those
expressly provided for in the Purchase Agreement or this Order, are required for the Debtors to
Close the Sale and consummate the Transactions.

K.      The Debtors' decision to sell substantially all of their assets was based
upon severe pre-petition liquidity constraints that only worsened post-petition. In the absence of
Court approval of the Sale, the Debtors' chapter 11 cases ultimately would have been a free-fall
chapter 11, and the Debtors would have been required to begin the piecemeal liquidation of the
Debtors' assets and businesses, which piecemeal liquidation would result in less value for the
Debtors' creditor constituencies than is provided pursuant to the Sale and the loss of several
thousand jobs. Emergent circumstances and sound business reasons exist for the Debtors' Sale
of the Purchased Assets and consummation of the Transactions pursuant to the Purchase
Agreement and this Order.

L.      Entry into the Purchase Agreement and consummation of the Transactions
constitute the exercise by the Debtors of sound business judgment and such acts are in the best
interests of the Debtors, their estates and creditors, and all parties in interest. The Court finds that

the Debtors have articulated good and sufficient business reasons justifying the Sale of the Purchased Assets to Purchaser. Such business reasons include, but are not limited to, the following: (i) the Purchase Agreement constitutes the highest and best offer for the Purchased Assets; (ii) the Purchase Agreement and the closing thereon will present the best opportunity to realize the value of the Purchased Assets on a going concern basis and avoid decline and devaluation of the Debtors' business; (iii) there is substantial risk of deterioration of the value of the Purchased Assets if the Sale is not consummated promptly; and (iv) the Purchase Agreement and the closing thereon will provide a greater recovery for the Debtors' creditors than would be provided by any other presently available restructuring alternative.

M.     The Purchase Agreement and the Transactions were negotiated and have been and are undertaken by the Debtors and Purchaser at arms' length without collusion or fraud, and in good faith within the meaning of Section 363(m) and (n) of the Bankruptcy Code. An auction was conducted in accordance with the Bid Procedures Order on July 10, 2007, at which Purchaser was declared the highest and best bidder. The auction was conducted at arms' length and in good faith within the meaning of Section 363(m) of the Bankruptcy Code. As a result of the foregoing, the Debtors and Purchaser are entitled to the protections of Section 363(m) of the Bankruptcy Code. Moreover, neither the Debtors nor Purchaser engaged in any conduct that would cause or permit the Purchase Agreement, the consummation of the Transactions or the assumption and assignment of any Assumed Executory Contracts to be avoided, or costs or damages to be imposed, under Section 363(n) of the Bankruptcy Code.

N.     The Sale does not constitute a *sub rosa* chapter 11 plan.

O.     Purchaser, is a secured creditor of the Debtors, holding valid Liens, Claims, Interests and Encumbrances in, on and against the Debtors, their estates and property of

6

the estates, arising in connection with the Junior Secured Super-priority Debtor-in-Possession

Credit Agreement, approved by this Court pursuant to an order entered on June 26, 2007 (the

"Junior DIP Credit Agreement"). Purchaser held an allowed claim, as of date of the Auction in

the amount of $10,118,448 and was authorized to credit bid any or all of such allowed claim at

the Auction. At the Auction, Purchaser credit bid $10,118,448 (the "Credit Bid"), which Credit

Bid was a valid and proper offer pursuant to the Bid Procedures and Bankruptcy Code Sections

363(b) and 363(k).

P.      The total consideration provided by Purchaser for the Purchased Assets is

the highest and best offer received by the Debtors, and the Purchase Price constitutes

(a) reasonably equivalent value under the Bankruptcy Code and Uniform Fraudulent Transfer

Act, (b) fair consideration under the Uniform Fraudulent Conveyance Act, and (c) reasonably

equivalent value, fair consideration and fair value under any other applicable laws of the United

States, any state, territory or possession, or the District of Columbia ((a), (b) and (c)

collectively, "Value"), for the Purchased Assets.

Q.      Purchaser would not have entered into the Purchase Agreement and would

not consummate the Transactions, thus adversely affecting the Debtors, their estates, and their

creditors, if the sale of the Purchased Assets to Purchaser and the assignment of Assumed

Executory Contracts to Purchaser was not free and clear of all Liens, Claims, Interests and

Encumbrances, or if Purchaser would, or in the future could, be liable for any of such Liens,

Claims, Interests and Encumbrances. A sale of the Purchased Assets other than one free and

clear of Liens, Claims, Interests and Encumbrances would adversely impact the Debtors' estates,

and would yield substantially less value for the Debtors' estates, with less certainty than the Sale.

7

Therefore, the Sale contemplated by the Purchase Agreement is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

R.    The Debtors may sell the Purchased Assets free and clear of all Liens, Claims, Interests and Encumbrances, because, with respect to each creditor asserting a Lien, Claim or Interest, one or more of the standards set forth in Bankruptcy Code § 363(f)(1)-(5) has been satisfied. Those holders of Liens, Claims, Interests and Encumbrances who did not object or who withdrew their objections to the Sale or the Sale Motion are deemed to have consented to the Sale Motion and Sale pursuant to Bankruptcy Code § 363(f)(2). Those holders of Liens, Claims, Interests and Encumbrances who did object fall within one or more of the other subsections of Bankruptcy Code Section 363(f).

S.    The Court has appointed a Consumer Privacy Ombudsman, who has filed a preliminary report. Subject to Purchaser's continued compliance with the Debtors' existing consumer privacy policies, and the Purchaser's agreement to confer with the Consumer Privacy Ombudsman with respect to the opt-out issues raised by the Consumer Privacy Ombudsman in his report, the Sale satisfies the requirements of Bankruptcy Code Section 363(b)(1).

T.    There was no evidence of insider influence or improper conduct by Purchaser or any of its affiliates in connection with the negotiation of the Purchase Agreement with the Debtors. There was also no evidence of fraud or collusion among Purchaser and its affiliates and any other bidders for the Debtors' assets, or collusion between the Debtors and Purchaser or its affiliates to the detriment of any other bidders. The Debtors established a due diligence room in which the information provided to Purchaser in connection with the negotiation of the Purchase Agreement was also provided to other potential bidders for the assets.

U.     At no time was Purchaser or its affiliates an "insider" or "affiliate" of any of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors or stockholders existed between Purchaser or its affiliates and any of the Debtors. Pursuant to the Purchase Agreement, Purchaser is not purchasing all of the Debtors' assets in that Purchaser is not purchasing any of the Excluded Assets, and Purchaser is not holding itself out to the public as a continuation of the Debtors. Those of the Debtors' employees who are to be employed by Purchaser pursuant to Article IX of the Purchase Agreement, are being hired under new employment contracts or other arrangements to be entered into or to become effective at or after the time of the Closing. The Transactions do not amount to a consolidation, merger or *de facto* merger of Purchaser and the Debtors and/or the Debtors' estates, there is not substantial continuity between Purchaser and the Debtors, there is no continuity of enterprise between the Debtors and Purchaser, Purchaser is not a mere continuation of the Debtors or the Debtors' estates, and Purchaser does not constitute a successor to the Debtor or the Debtors' estates.

V.     Except as otherwise expressly provided in the Purchase Agreement, the transfer of the Purchased Assets to Purchaser will be a legal, valid, and effective transfer of the Purchased Assets, and will vest Purchaser with all right, title, and interest of the Debtors to the Purchased Assets free and clear of all Liens, Claims, Interests and Encumbrances, including but not limited to all Claims arising under doctrines of successor liability.

W.     Approval of the Purchase Agreement and assumption, assignment, and sale of each of the Assumed Executory Contracts, and consummation of the Sale of the Purchased Assets at this time are in the best interests of the Debtors, their creditors, their estates, and all parties in interest. Time is of the essence in consummating the Sale. In order to

9

maximize the value of the Debtors' assets, it is essential that the sale of the Purchased Assets occur within the time constraints set forth in the Purchase Agreement. Accordingly, there is cause to lift the stays contemplated by Bankruptcy Rules 6004 and 6006.

X.    GE Money Bank (as successor to GE Capital Consumer Card Co.) ("GEMB") and Tweeter Home Entertainment Group, Inc. , are parties to the Amended and Restated Private Label Revolving Credit Plan Agreement, dated September 1, 2004 (the "GEMB Credit Card Agreement"). The Debtors, Purchaser and GEMB have agreed that Debtors shall assume the GEMB Credit Card Agreement and assign it to Purchaser, but only pursuant to the letter agreement between Purchaser and GEMB dated as of the date hereof (the "GEMB Letter Agreement"). Pursuant to the GEMB Letter Agreement, among other things, Purchaser has agreed to post a letter of credit or cash collateral in the amount of $2.2 million, to secure certain of its obligations under the assumed and assigned GEMB Credit Card Agreement. In connection with the Closing, (a) Purchaser, for its own benefit and on its own behalf, has agreed to deliver the cash collateral to GEMB, ~~and (b) the Senior DIP Agent (defined below) has agreed to release the equivalent amount to the estate~~

Y.    The Debtors' payment of the Termination Fee to Great American Group, LLC and Crystal Capital Fund Management, L.P. (together, the "GOB Stalking Horse") in the amount of $175,000 (the "GOB Termination Fee"), under the conditions set forth in the Motion, as amended, and the Bid Procedures Order, is (a) an actual and necessary cost of preserving the Debtors' estates, within the meaning of section 503(b) of the Bankruptcy Code, (b) of substantial benefit to the Debtors' estates and creditors and all parties in interest herein, (c) reasonable and appropriate and (d) necessary to ensure that the GOB Stalking Horse pursued its proposed

agreement to undertake the Store Closing Sales and is supported by the Debtors, the Committee and GECC.

Based upon all of the foregoing, and after due deliberation, **THE COURT ORDERS, ADJUDGES, AND DECREES THAT:**

1.      The relief requested in the Sale Motion is granted in the manner and to the extent provided herein.

2.      All objections and responses concerning the Sale Motion , other than adequate assurance, cure and any assumption and assignment issues in connection with Assumed Leases and/or Assumed Contracts, are resolved in accordance with the terms of this Order and as set forth in the record of the Sale Hearing; and to the extent any such objection or response was not otherwise withdrawn, waived or settled, it is, and all reservations of rights or relief requested therein, overruled and denied.  None of the rights of the Debtors' landlords under Bankruptcy Code section 365 are being affected by this Order and all such rights are expressly preserved.

3.      The Purchase Agreement, the Credit Bid, the Transactions, and the Sale of the Purchased Assets to Purchaser, are hereby approved and authorized in all respects. ~~or executory contract parties~~

4.      Pursuant to Sections 363(b) and 363(f) of the Bankruptcy Code, upon the Closing Date, under the Purchase Agreement, the Purchased Assets, except any Assumed Leases, shall be transferred to Purchaser free and clear of (i) all Liens, Claims, Interests and Encumbrances, (ii) any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership of the Purchased Assets, and (iii) any Claim, whether arising prior to or subsequent to the commencement of these bankruptcy cases, arising under doctrines of successor liability.

5.       Except as expressly provided in the Purchase Agreement, Purchaser is not assuming nor shall it or any affiliate of Purchaser be in any way liable or responsible, as a successor or otherwise, for any liabilities, debts, or obligations of the Debtors in any way whatsoever relating to or arising from the Debtors' ownership or use of the Purchased Assets prior to the consummation of the transactions contemplated by the Purchase Agreement, or any liabilities calculable by reference to the Debtors or their operations or the Purchased Assets, or relating to continuing or other conditions existing on or prior to the Closing Date, which liabilities, debts, and obligations are hereby extinguished insofar as they may give rise to liability, successor or otherwise, against Purchaser or any affiliate of the Purchaser.

6.       The consideration provided by Purchaser for the Purchased Assets under the Purchase Agreement, including the portion of the consideration that consisted of the Credit Bid, is fair and reasonable and shall be deemed for all purposes to constitute Value under the Bankruptcy Code and any other applicable law, and the Sale may not be avoided, or costs or damages imposed or awarded, under Section 363(n), or any other provision of the Bankruptcy Code.

7.       The Transactions are undertaken by Purchaser in good faith, Purchaser is a purchaser in good faith of the Purchased Assets as that term is used in Section 363(m) of the Bankruptcy Code, and Purchaser is entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code; accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale of the Purchased Assets to Purchaser (including the assumption, assignment, and sale of Assumed Executory Contracts), unless such authorization is duly stayed pending such appeal.

8.      Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the
Debtors and the Purchaser are each hereby authorized and directed to take any and all actions
necessary or appropriate to: (i) consummate the sale of the Purchased Assets to Purchaser
(including, without limitation, to convey to Purchaser any and all of the Purchased Assets
intended to be conveyed) and the Closing of the Transactions in accordance with the Sale
Motion, the Purchase Agreement and this Order; and (ii) perform, consummate, implement and
close fully the Purchase Agreement together with all additional instruments and documents that
may be reasonably necessary or desirable to implement the Purchase Agreement, including
without limitation, take all actions and execute all documents reasonably necessary or
appropriate to effectuate any obligations under the Purchase Agreement and to execute and
deliver such other documents and take such other actions as are necessary to effectuate the
transactions contemplated by the Purchase Agreement, including but not limited to obtaining any
and all general liability insurance, director and officer insurance (but only after consultation with
the Committee) and such other insurance as is appropriate.  The parties shall have no obligation
to proceed with the Closing of the Purchase Agreement until all conditions precedent to their
obligations to do so as set forth in Article X thereof have been met, satisfied or waived.

9.      Purchaser is authorized to remit, or cause to be remitted, from the ~~and Exhibit B hereto~~
Purchase Price at Closing, in accordance with the terms of the payoff letters attached hereto as ~~substantially in the form to be attached hereto pursuant to separate filing~~
Exhibit A (the "Payoff Letters"): (a) to the agent under the Senior DIP Credit Agreement, for the
benefit of the agent and the other lenders under the Senior DIP Credit Agreement, cash in the
amount necessary to indefeasibly pay in full in cash all obligations owing to the agent and
lenders under and in connection with the DIP Credit Agreement; (b) to the agent under the Junior
DIP Credit Agreement, for the benefit of the agent and the other lenders under the Junior DIP

Credit Agreement, cash in the amount necessary to indefeasibly pay in full in cash all obligations owing to the agent and lenders under and in connection with the Junior DIP Credit Agreement, less the amount of the Credit Bid; and (c) to the Sellers, the remaining amounts due and payable as Purchase Price (the "Seller Proceeds"). From the Seller Proceeds, on or before July 20, 2007, Sellers shall fund (into segregated accounts) the following reserves in the amounts listed on Exhibit B attached hereto: the Professional Fee Reserve (which Professional Fee Reserve represents the funding by the Senior DIP Agent of the Carve Out under the Senior DIP Order, arising out of reserves established by the Senior DIP Agent since the Petition Date for the exclusive benefit of the estate's professionals, and shall not be used for any other purpose); the Utility Reserve; the reserve (the "Objecting Texas Tax Authorities Reserve") for the tax jurisdictions represented by the firm of McCreary, Veselka, Bragg & Allen, PC, the tax jurisdictions represented by the firm of Linebarger, Goggan, Blair & Sampson, LLP; the tax jurisdictions represented by the firm of Perdue, Brandon, Fielder, Collins & Mott, LLP; and the tax jurisdictions represented by the Law Offices of Robert E. Luna, PC; (collectively the "Objecting Texas Tax Authorities") in the total amount of $560,000; and the Polk Reserve.

10.    Upon the Closing, the remittance to the Debtors of the remaining Seller Proceeds shall constitute the complete and final release, discharge and satisfaction of the Senior DIP Agent's and the Junior DIP Agent's (both as defined in the Junior DIP Financing Order) respective obligations under the Senior DIP Financing Order, the Senior DIP Facility, the Junior DIP Order, and the Junior DIP Credit Agreement, and the Intercreditor Agreement (each as defined in the Junior DIP Financing Order). including, without limitation, any obligations with respect to the establishment of reserves listed in paragraph 9 above, subject, however, to the ~~avoidance~~ Challenge rights in Paragraph 7 of the Senior DIP Financing Order ~~with respect to the Prec~~ Ⓞ

└─ except with respect to GE Money Bank

14

Petition Agent and Pre-Petition Credit Agreement Lenders (both as defined in the Senior DIP Financing Order).

11.    Upon the Closing or at such other times as provided in the Purchase Agreement, Purchaser is authorized to pay, perform and otherwise discharge the Assumed Liabilities pursuant to Section 2.3 of the Purchase Agreement.

12.    Purchaser is hereby authorized in connection with the consummation of the Sale to allocate the Purchased Assets among its affiliates, designees, assignees, and/or successors in a manner as it in its sole discretion deems appropriate and to assign, sublease, sublicense, transfer or otherwise dispose of any of the Purchased Assets to its affiliates, designees, assignees, and/or successors with all of the rights and protections accorded under this Order and the Purchase Agreement, and the Debtors shall cooperate with and take all actions reasonably requested by Purchaser to effectuate any of the foregoing.

13.    The Purchase Agreement contains the Debtors' agreement not to bring Avoidance Actions with respect to any payment that would constitute a Cure Cost under an Assumed Contract, and such agreement (a) shall be binding upon all creditors and equity holders of the Debtors, the Committee, all successors and assigns of the Debtors and their affiliates and subsidiaries, and any trustees, examiners, "responsible persons" or other fiduciaries appointed in the Debtors' bankruptcy chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code, and (b) shall operate to bar, enjoin and estop any such persons and entities from commencing any such Avoidance Actions.

14.    No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale and the Transactions.  No brokers were involved in consummating

the Sale or the Transactions, and no brokers' commissions are due to any person or entity in connection with the Sale or the Transactions.

15.    Upon the Closing, (a) the Debtors are hereby authorized and directed to consummate, and shall be deemed for all purposes to have consummated, the sale, transfer and assignment of the Purchased Assets to Purchaser free and clear of any and all Liens, Claims, Interests and Encumbrances, and (b) except as otherwise expressly provided in the Purchase Agreement, all such Liens, Claims, Interests and Encumbrances shall be and hereby are released, terminated and discharged as to the Purchaser and the Purchased Assets.

16.    Upon the Closing, and except as otherwise expressly provided in the Purchase Agreement, Purchaser shall not be liable for any Claims against, and liabilities and obligations of, the Debtors or any of the Debtors' predecessors or affiliates.  Without limiting the generality of the foregoing, and except as otherwise provided in the Purchase Agreement, (a) Purchaser shall have no liability or obligation to pay wages, bonuses, severance pay, benefits (including, without limitation, contributions or payments on account of any under-funding with respect to any pension plans) or make any other payment to employees of the Debtors, (b) Purchaser, shall have no liability or obligation in respect of any collective bargaining agreement, employee pension plan, employee health plan, employee retention program, employee incentive program or any other similar agreement, plan or program to which any Debtors are a party (including, without limitation, liabilities or obligations arising from or related to the rejection or other termination of any such plan, program agreement or benefit), (c) Purchaser shall in no way be deemed a party to or assignee of any such employee benefit, agreement, plan or program, (d) and all parties to any such employee benefit, agreement, plan or

program are enjoined from asserting against Purchaser any Claims arising from or relating to such employee benefit, agreement, plan or program.

17.    Purchaser shall not be deemed a successor of or to the Debtors or the Debtors' estates with respect to any Liens, Claims, Interests and Encumbrances against the Debtors or the Purchased Assets, and Purchaser shall not be liable in any way for any such Liens, Claims, Interests and Encumbrances, including, without limitation, the Excluded Liabilities, Excluded Environmental Liabilities or Excluded Assets. Upon the Closing of the Sale, all creditors, employees and equityholders of the Debtors are permanently and forever barred, restrained and enjoined from (a) asserting any Claims or enforcing remedies, or commencing or continuing in any manner any action or other proceeding of any kind, against Purchaser or the Purchased Assets on account of any of the Liens, Claims, Interests and Encumbrances, Excluded Liabilities, Excluded Environmental Liabilities or Excluded Assets, or (b) asserting any Claims or enforcing remedies under any theory of successor liability, *de facto* merger, or substantial continuity.

18.    On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of all of the Purchased Assets or a bill of sale transferring good and marketable title in such Purchased Assets to Purchaser on the Closing Date pursuant to the terms of the Purchase Agreement.

19.    This Order (a) is and shall be effective as a determination that, upon Closing, all Liens, Interests and Encumbrances existing as to the Purchased Assets conveyed to Purchaser have been and hereby are adjudged and declared to be unconditionally released, discharged and terminated, and (b) is and shall be binding upon and govern the acts of all entities, including, all filing agents, filing officers, title agents, title companies, recorders of

17

mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets conveyed to Purchaser. All such entities described above in this paragraph are authorized and specifically directed to strike all recorded Liens, Interests and Encumbrances against the Purchased Assets from their records, official and otherwise and including without limitation those Liens, Interests and Encumbrances listed in the applicable schedules to the Purchase Agreement.

20.     If any person or entity, which has filed statements or other documents or agreements evidencing Liens, Interests and Encumbrances on or in the Purchased Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of Liens, Interests and Encumbrances, and any other documents necessary for the purpose of documenting the release of all Liens, Interests and Encumbrances which the person or entity has or may assert with respect to the Purchased Assets, the Debtors and Purchasers are hereby authorized and directed, subject to the provisions of the Payoff Letters, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Purchased Assets.

21.     Each and every federal, state and governmental agency or department, and any other person or entity, is hereby directed to accept any and all documents and instruments

necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

22.    Except as otherwise provided in the Purchase Agreement, any and all Purchased Assets in the possession or control of any person or entity, including, without limitation, any former vendor, supplier or employee of the Debtors shall be transferred to Purchaser free and clear of Liens, Claims, Interests and Encumbrances and shall be delivered at the time of Closing to Purchaser.

23.    This Order and the Purchase Agreement shall be binding in all respects upon all creditors and equityholders of any of the Debtors, all non-debtor parties to the Assumed Executory Contracts, the Committee, all successors and assigns of the Debtors and their affiliates and subsidiaries, and any trustees, examiners, "responsible persons" or other fiduciaries appointed in the Debtors' bankruptcy chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code, and the Purchase Agreement shall not be subject to rejection or avoidance under any circumstances.

24.    The Purchase Agreement and any related agreements, documents, or other instruments may be modified amended, or supplemented by the parties thereto, in a writing signed by the parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

25.    Any amounts that become payable by the Debtors to Purchaser pursuant to the Purchase Agreement or any of the documents delivered by the Debtors pursuant to or in connection with the Purchase Agreement shall (a) constitute administrative expenses of the

Debtors' estates and (b) be paid by the Debtors in the time and manner as provided in the

Purchase Agreement without further order of this Court.

26.    The assumption and assignment of the GEMB Agreement to Purchaser is

hereby authorized and approved, pursuant to the terms of the GEMB Letter Agreement.

Purchaser is directed to deliver to GEMB $2.2 million of cash collateral at Closing, ~~and the~~

~~Senior DIP Agent is directed to deliver the equivalent sum to the estate at Closing.~~  Upon receipt

by GEMB of the $2.2 million of cash collateral from Purchaser, the GEMB Letter Agreement

shall be effective.  Upon the Closing, the Challenge Period Termination Date, as defined in

paragraph 7 of this Court's Final Order (1) Approving Post-Petition Financing, (2) Authorizing

Use of Cash Collateral Pursuant to 11 U.S.C. § 363, (3) Granting Liens and Providing

Superpriority Administrative Expense Status Pursuant to 11 U.S.C. §§ 363 and 364 and (4)

Modifying Automatic Stay Pursuant to 11 U.S.C. § 362 (the "Senior DIP Financing Order"), has

occurred for all purposes with respect to any and all alleged claims of the estates against GEMB.

27.    Subject to the provisions of paragraph 10 hereof, nothing contained in this

Order or the Purchase Agreement shall: (a) abrogate or otherwise prejudice the rights of the

parties under that Stipulation in Resolution of Limited Objection to Sale Procedures and

Authorizing Debtors to Use Consigned Products and Cash Collateral of Polk Audio, Inc. and

Granting Adequate Protection to Polk Audio, Inc. and this Court's Order Approving Stipulation

in Resolution of Limited Objection to Sale Procedures and Authorizing Debtors to Use

Consigned Products and Cash Collateral of Polk Audio, Inc. and Granting Adequate Protection

to Polk Audio, Inc. (Docket No. 248) (the "Polk Stipulation"); or (b) require the filing by Polk

Audio, Inc. of any additional financing statements or similar notices in order to protect and

maintain its rights in existence prior to the entry of this Order.  Moreover, the Polk Stipulation,

shall remain in full force and effect, valid and binding, and shall, in addition, be deemed to be in full force and effect, valid and binding with respect to the Purchaser as if the Purchaser was Tweeter (as this term is defined in the Polk Stipulation), from and after the Closing Date until the Consigned Agreement (as this term is defined in the Polk Stipulation) is either (a) assumed and assigned, or (b) rejected. Polk's Lien (as this term is defined in the Polk Stipulation) on all Consigned Products (as this term is defined in the Polk Stipulation) and all proceeds of the sale of Consigned Products shall, at all times, continue to be valid, properly perfected, first priority and unavoidable

28.     The Debtors are hereby authorized and directed to pay to the GOB Stalking Horse the GOB Termination Fee and shall wire transfer said funds to the account of the GOB Stalking Horse pursuant to wire transfer instructions previously provided to the Debtors within two business days of the entry of the Closing.

29.     Purchaser is directed to abide by the Debtors' existing privacy policies with respect to personally identifiable information as that term is used in Bankruptcy Code Section 363(b)(1), and this Court shall retain jurisdiction over Purchaser's further compliance with the requirements of such Section 363(b)(1).

30.     Nothing contained in any order entered in the Debtors' bankruptcy cases subsequent to entry of this Order, nor in any chapter 11 plan confirmed in these chapter 11 cases, shall conflict with or derogate from the provisions of the Purchase Agreement or the terms of this Order.

31.     Notwithstanding any language to the contrary in this Order or the Purchase Agreement, including but not limited to the definition of Excluded Environmental Liabilities in the Purchase Agreement, nothing in this Order or the Purchase Agreement releases,

nullifies, or enjoins the enforcement of any liability to a governmental unit under environmental laws or regulations that any entity would be subject to based on its status as the owner or operator of property owned or operated by that entity after the date of entry of this Order, provided that nothing herein shall be deemed to limit or abrogate defenses to such liability that any entity may have under environmental laws or regulations.

32.     This Order shall be effective immediately upon entry, and any stay of orders provided for in Bankruptcy Rules 6004(h), 6006(d) and any other provision of the Bankruptcy Code or Bankruptcy Rules is expressly lifted.

33.     The provisions of this Order are nonseverable and mutually dependent.

34.     To the extent applicable, the automatic stay pursuant to Section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtors to the extent necessary, without further order of the Court (i) to allow Purchaser to give the Debtors any notice provided for in the Purchase Agreement, and (ii) to allow Purchaser to take any and all actions permitted by the Purchase Agreement or the Ancillary Documents.

35.     To the extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any Permit relating to the operation of the Purchased Assets sold, transferred or conveyed to Purchaser on account of the filing or pendency of these Chapter 11 cases or the consummation of the Sale.

36.     Each and every federal, state and local government agency or department is directed to accept any and all documents and instruments necessary and appropriate to consummate the transfer of any of the Purchased Assets.

37.     The failure specifically to include or make reference to any particular provisions of the Purchase Agreement in this Order shall not diminish or impair the effectiveness

22

of such provision, it being the intent of the Court that the Purchase Agreement is authorized and approved in its entirety.

38.    The Court retains jurisdiction, even after the closing of these chapter 11 cases, to:  (1) interpret, implement and enforce the terms and provisions of this Order (including the injunctive relief provided in this Order) and the terms of the Purchase Agreement, all amendments thereto and any waivers and consents thereunder; (2) protect Purchaser, or any of the Purchased Assets, from and against any of the Liens, Claims, Interests and Encumbrances; (3) compel delivery of all Purchased Assets to Purchaser; and (4) resolve any disputes arising under or related to the Purchase Agreement, the Sale or the Transactions, or Purchaser's peaceful use and enjoyment of the Purchased Assets.

39.    The liens of the Objecting Texas Tax Authorities shall attach to the segregated proceeds in the Objecting Texas Tax Authorities Reserve with the same validity, in the amount and with the same priority as and to the same extent that they exist on the property being sold in this sale.  The amounts in the segregated account shall constitute adequate protection for the sale of the Objecting Texas Tax Authorities' collateral.  No distribution shall be made from the segregated account absent consent of the Debtors and the Objecting Texas Tax Authorities, or by order of the Court, upon subsequent hearing appropriately noticed to the Objecting Texas Tax Authorities.  However, upon agreement of the Debtors and the Objecting Texas Tax Authorities as to the amount of any given claim, the Debtors may disburse payment to those Objecting Texas Tax Authorities in satisfaction of that claim.

40.    With respect to ~~JBL Audio, Inc.~~ JBL, Inc. and Harman Kardon, Incorporated ("JBL"), nothing in this Order shall affect the priority or status of the claims that JBL Audio, Inc., may have against the Debtors.  To the extent that such claims were secured as of the Petition Date, such claims shall remain secured.  To the

extent that such claims were not properly perfected and/or secured as of the Petition Date,

nothing in this order shall be deemed to grant secured status to such claims. Moreover, nothing

herein shall be deemed to waive the rights of any parties in interest with respect to such claims.

41.    All amounts for (i) fees for hours worked by the Consumer Privacy

Ombudsman after the Closing Date and (ii) expenses incurred by the Consumer Privacy

Ombudsman after the Closing Date shall be reimbursed to the Debtors' estates or paid directly by

the Purchaser.

Dated:  July 13, 2007
Wilmington, Delaware

**THE HONORABLE PETER J. WALSH,**
**UNITED STATES BANKRUPTCY JUDGE**

42. In order to partially resolve the objection GSI Commerce Solutions, Inc. ("GSI") (Docket No. 410) Debtors and Purchaser agree that the definition of Inventory set forth in Section 1.1 of the Purchase Agreement shall include the Debtors' inventory now or hereafter located in GSI's locations in Louisville and Shepherdsville, KY. In addition, absent joint written instructions from the Debtors and the Purchaser, net proceeds, if any, shall continue to be remitted to the Debtors under the agreement with GSI dated April 18, 2005 (and the same shall be allocated amongst the Debtors and Purchaser in accordance with the terms of the Purchase Agreement).