## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

JUDGE PETER J. WALSH

824 MARKET STREET
WILMINGTON, DE 19801
(302) 252-2925

July 23, 2007

Gregg M. Galardi
Skadden, Arps, Slate, Meagher
One Rodney Square
Wilmington, DE 19899

**Re: Tweeter Home Entertainment Group, Inc.
Case No. 07-10787**

Dear Mr. Galardi:

    Enclosed is a June 29, 2007 letter and attachment addressed to me from Sten E. Johnson which has been docketed at Doc. # 305. I request that you serve and file a response.

Very truly yours,

Peter J. Walsh

PJW: ipm

Enc.

cc: Sten E. Johnson (w/o enclosure)

**STEN E JOHNSON**

1019 Medlin Street
Smyrna, Georgia 30080
Phone (770) 432-2306
stenkat@bellsouth.net

June 29, 2007

Honorable Judge Peter J. Walsh
United States Bankruptcy Court
District of Delaware
824 Market Street, 3rd Floor
Wilmington, DE 19801

Dear Judge Walsh,

I know you are very busy and I hate to take up your time, but felt compelled to write this letter. Sometimes forms do not tell a whole story. This has to do with the Tweeter Home Entertainment Group, Inc. case # 07-10787 case that is before you.
On March 21, 2007 at 5:00 pm our entire department was called in to a meeting where we were notified of the company's plan to shut down our facility and end our employment. We were told we had a number of options. We could seek other employment, quit and seek unemployment, or stay on though the process. We were told if we stayed on through the process and helped shut down the facility in an orderly and professional manner we would be offered severance packages. I considered this a " quid pro quo " agreement and based on that and my loyalty to the company agreed to stay. This was to last 60 days and after that time most employees left. I was asked and stayed on an additional 2 weeks as the work was not completed.
My last day worked was June 1, 2007 and received my severance agreement on June 4, 2007 and looked it over, signed it and sent it US Postal Service Certified Mail on June 6, 2007. I spoke with the Human Resources Department at Tweeter this morning and was told they did not and would not sign and return the agreements. Maybe if I had left after the 60 days instead of staying on I would have a signed copy.
Sir, I have not received any thing back. I have enclosed my copy of the agreement, hopefully all the forms required and a copy of the certified mail receipt. I worked for this company for almost 18 years in the service department and after moving thousands of televisions over those years my body will never be the same (5'4" and 120 lbs.). I am not the only one this is affecting. I have a wife and three kids. I was hoping and planning to use this time and these funds to retrain in another field. We have been left in limbo these last several weeks. I ask as you decide the fate of the company's assets you look hard at these severance agreements and do what is just and fair.

Thank you very much for your time and consideration,

Sincerely,

*Sten E. Johnson*

Sten E. Johnson

305

## SEVERANCE AGREEMENT
## AND RELEASE OF ALL CLAIMS

This Severance Agreement and Release of all claims ("Agreement") is being entered into between **Sten Johnson** (the "Employee") and **Tweeter Home Entertainment Group, Inc.** (the "Company").

The complete terms of the Agreement are set forth herein below:

1.   The Employee acknowledges and agrees that the Company's obligations as set forth below include payments and/or benefits which are not due to the Employee now, or in the future, and which constitute valuable consideration for the promises and undertakings set forth in this Agreement. The Employee acknowledges and agrees that Employee has been paid all compensation and benefits due and owing to Employee through the date of this Agreement, and that Employee is not due any other wages, salary, commissions, overtime, bonuses, vacation pay, Discretionary Time pay, or other payments or benefits whatsoever from the Company except for: (i)) earned commissions which will be paid to the Employee within 90 days pursuant to Company policy, and which will be reconciled against any outstanding draw balances (see attached Commission Payout Policy) and (ii)Severance Pay as provided in this Agreement herein below.

2.   The Employee agrees that the Employee's employment with the Company has ended effective **June 2, 2007.**

3.   For the purposes of this Agreement, the term "Released Parties" refers to **Tweeter Home Entertainment Group, Inc.** and any past, present or future directors, officers, stockholders, agents, employees, benefit plans and their administrators and fiduciaries, insurers and reinsurers of the Company. The term "Released Parties" also includes any parent, subsidiary, predecessor, successor, affiliated or otherwise related companies and their past, present or future directors, officers, stockholders, agents, benefit plans and their administrators and fiduciaries, insurers, reinsurers and employees.

4.   In consideration for the execution of this Agreement, the Company will pay the Employee the gross amount of **$ 17,172.00**, less applicable taxes and deductions, which is the equivalent to **15 week(s)** of regular pay, as Severance Pay. This Severance Pay will be payable to Employee in regular bi-weekly installments of **$ 2,289.60** commencing no later than the twenty-first calendar day after the Company's receipt of the signed Agreement, in accordance with the attached Severance Pay Information document. If the Employee is rehired by the Company during the Severance Pay Period, the Employee agrees that the foregoing Severance Pay shall cease effective on the Employee's date of rehire. If rehired, the Employee agrees that the severance pay received prior to the date of rehire constitutes sufficient consideration for the releases and waivers contained in this Agreement.

5.   Release: In consideration for the payment and undertakings described above, Employee does hereby completely release and forever discharge the Released Parties from all claims, rights, demands, actions, obligations, and causes of action of any and every kind, nature and character, known or unknown, suspected or unsuspected, which Employee may now have, or has ever had, against the

Released Parties arising from or in any way connected with or incidental to the dealings between the parties prior to the effective date of this Agreement. Without limiting the generality of the foregoing, the Employee also specifically releases the Released Parties from any and all claims, demands and causes of action which have been or could have been asserted as a result of Employee's employment with the Company, separation from employment or other status with the Company, including but not limited to all "wrongful discharge" claims; all claims relating to any contracts of employment, express or implied; any covenant of good faith and fair dealing, express or implied; any tort of any nature; any claims relating to unlawful harassment or discrimination of any sort, any claims arising out of any federal, state, or municipal statute or ordinance; any claims under the Federal Rehabilitation Act of 1973, Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, the Age Discrimination and Employment Act of 1967, as amended, the Family and Medical Leave Act of 1993, the Americans with Disabilities Act, and any other similar provisions under the laws of any other state, and any other laws or regulations relating to employment, discrimination, retaliation or civil rights and any and all claims for attorney's fees and costs.

6. Covenant Not to Sue: Employee agrees not to bring or pursue any lawsuit in any state, federal or other court against the Released Parties because of any matter which relates to or arises out of the dealings between the parties. Employee understands and agrees that if Employee files any lawsuit with respect to any released claims, the Company has the right to raise a defense that such suit is barred by this Agreement.

This Agreement is not intended to affect the Employee's continuing right to file, cooperate with, or participate in proceedings before state or federal fair employment practices agencies such as the United States Equal Employment Opportunity Commission ("EEOC"); provided, however, that Employee waives all rights to collect damages or to receive other remedies or relief in connection with those proceedings.

7. This Agreement is intended to comply with all State and federal statutes relating to employment matters and the workplace, including those statutes referenced in Paragraph 5 hereinabove, with regard to Employee's waiver of rights under those and similar statutes. In addition, this Agreement is intended to comply with the Older Workers' Benefit Protection Act of 1990 with regard to the Employee's waiver of rights under the Age Discrimination in Employment Act of 1967 ("ADEA"). Accordingly, and in order to effectuate compliance with and the waiver of all rights under the aforementioned statutes and the releases set forth in Paragraph 5 of this Agreement, it is specifically understood and agreed as follows:

    (a) The Employee is knowingly and voluntarily specifically waiving rights and claims under the ADEA.

    (b) The waiver of rights under the ADEA does not extend to any rights or claims arising after the date this Agreement is signed by the Employee.

    (c) The Employee is receiving consideration in addition to what the Employee would otherwise be entitled.

(d) The Employee acknowledges that the Employee has been advised to consult with an attorney before signing this Agreement.

(e) **The Employee acknowledges that the Employee has had a period of forty-five (45) days to consider the decision to sign the Agreement.**

(f) This Agreement shall become effective on the eighth (8th) day following the date on which it is signed by the Employee. It is understood that the Employee may revoke Employee's approval of this Agreement in the seven-day period following the date on which the Employee signs the Agreement. Notice of revocation must be in writing, and submitted to the Vice President of Human Resources of the Company within the seven-day period.

(g) In connection with this Agreement, and attached as Exhibit A hereto, the Employee is being provided with and hereby acknowledges receipt of:

(i) information that describes the group of employees to whom the Company is offering severance pay in exchange for a release of claims;

(ii) information regarding the eligibility factors for inclusion in that group;

(iii) information regarding the time limits applicable to that offer;

(iv) information regarding the job titles and ages of all individuals to whom the company is offering severance pay in exchange for a release of claims; and

(v) information regarding the ages of all individuals to whom the Company did not offer severance pay in exchange for a release of claims but who were in the same job classifications or organizational unit as any individual covered in the group described in subsection (i) hereinabove.

8. Employee agrees that employee has returned to the company any and all property (including customer specific data, cell phones, keys, computer equipment, uniforms, training materials, etc.) and other items listed below:

_____

_____

9. Employee agrees that the terms, amount and other facts concerning this Agreement shall be confidential. Employee agrees not to disclose any information relating to this Agreement to any third parties, including, but not limited to other current or past employees of the Company. Employee may disclose information relating to this Agreement to Employee's spouse, accountants and attorneys, and to others if required by law.

BOST1-898320-1 m

O40-20060926

-3-

10.  Employee agrees to be available to the Company either by telephone or, if the Company believes necessary, in person upon reasonable notice, to assist the Company in any matter relating to the services performed by Employee during Employee's employment with the Company. Employee also further agrees that Employee will cooperate fully with the Company in the defense or prosecution of any claims or actions now in existence or which may be brought or threatened in the future against or on behalf of the Company, including any claim or action against its directors, officers and employees, involving matters in which Employee has or is alleged to have knowledge. Employee's cooperation in connection with such claims or actions shall include, without limitation, Employee's being available to meet with the Company to prepare for any proceeding, to provide affidavits, to assist with any audit, inspection, proceeding or other inquiry, and to act as a witness in connection with any litigation or other legal proceeding affecting the Company. Employee further agrees that should Employee be contacted (directly or indirectly) by a person who is or may be legally adverse to the Company, or any attorney representing a person or entity that is or may be legally adverse to the Company, Employee shall promptly (within 48 hours) notify the Company's Vice President of Human Resources of that fact.

11.  Employee represents and warrants that Employee has not engaged in any conduct against the best interest of the Company during Employee's employment.

12.  Employee agrees to refrain from engaging in any conduct that damages the reputation or otherwise defames or disparages the Company, its officers, directors, trustees or employees. Employee also agrees that Employee will not engage in any unlawful or unfair competition following the execution of this Agreement.

13.  Employee acknowledges that while employed at the Company, Employee had access to certain confidential or proprietary information. Employee shall not utilize or divulge any confidential or proprietary information concerning Company to any third party, including but not limited to competitors, at any time during or following Employee's employment with Company.

14.  A fully executed copy of this Agreement will be mailed to the Employee's home address.

15.  This Agreement shall be deemed to have been executed and delivered within the Commonwealth of Massachusetts and the rights and obligations of the parties hereto shall be construed and enforced in accordance with and governed by the laws of Commonwealth of Massachusetts.

16.  This Agreement constitutes the entire Agreement among the parties with respect to the subject matter hereof and supersedes all prior and contemporaneous oral and written agreements and discussions relating to the subject matter herein.

17.  If a court of competent jurisdiction finds any clause or provision of this Agreement to be unenforceable, the remainder of this Agreement will remain in full force and will not be affected.

BOST1-898320-1 m

040-20060926

-4-

18    This Agreement shall be binding upon Employee and Employee's past, present and future heirs, spouse(s), legal representatives, agents and assigns.

**EMPLOYEE AGREES THAT EMPLOYEE HAS CAREFULLY READ THIS AGREEMENT, THAT EMPLOYEE HAS BEEN GIVEN AMPLE OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL, THAT EMPLOYEE IS RECEIVING SUBSTANTIAL BENEFITS AS A RESULT OF THIS AGREEMENT, AND THAT EMPLOYEE IS VOLUNTARILY SIGNING BY EMPLOYEE'S OWN FREE ACT. THIS AGREEMENT CONSTITUTES A VOLUNTARY AND KNOWING RELEASE AND WAIVER OF EMPLOYEE'S LEGAL RIGHTS UNDER LOCAL, STATE AND FEDERAL LAWS.**

An authorized representative of the Company and the Employee have signed this Agreement on the dates indicated hereinbelow.

**[EMPLOYEE]**                    **Tweeter Home Entertainment Group, Inc.**

_____        By:_____
                                   Vice President, Human Resources

Dated:_____        Dated:_____

BOST1-898320-1 m

040-20060926

-5-